UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

JACQUELINE WALCOTT-McQUIGG,   )
          )
      Plaintiff,   )
          )
      v.   )     CIVIL NO. 4:03CV56AS
          )
TRUSTEES OF PURDUE UNIVERSITY,   )
          )
      Defendant.   )

## MEMORANDUM, ORDER & OPINION

This matter is before the Court on the Motion for Summary Judgment (Docket No. 38) and Motion to Strike (Docket No. 48) filed by Defendant Trustees of Purdue University. Oral arguments were heard on these motion in Lafayette, Indiana on July 19, 2006, and the issues have been fully briefed. For the reasons set forth below, both motions are **GRANTED**. Accordingly, the Clerk is **ORDERED to DISMISS** this case **with prejudice**.

    I.    <u>Introduction</u>

On July 16, 2003, Plaintiff, Dr. Jacqueline Walcott-McQuigg ("Plaintiff" or "Dr. Walcott-McQuigg"), brought suit against her former employer, the Trustees of Purdue University ("Purdue"). Plaintiff filed a Second Amended Complaint against Purdue on December 1, 2003, alleging race discrimination, disparate treatment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 as amended, Title 42, United States Code, Section 2000e and following sections, and the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 and following sections (Second Amended Complaint at 1). Defendant filed its motion for summary judgment claiming there is no genuine issue of material fact and that it is

entitled to judgment as a matter of law.  Defendant also filed a Motion to Strike certain exhibits, and references to those exhibits, from Plaintiff's designation of materials in opposition to Defendant's Motion for Summary Judgment.

     II.    <u>Standard of Review</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).  Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.  In

this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

  III.  <u>Facts</u>

  The Plaintiff, Dr. Walcott-McQuigg, PhD., RN, was hired by Purdue University[1] on August 14, 2000.  (Pl. Dep. Exhibit B, C).  The Plaintiff was appointed to the faculty as a tenured Associate Professor of Nursing (Pl. Dep. at 31:26, 32:2).  She was also appointed Director of Nursing Research.  *Id*.

  On May 8, 2002, Dr. Walcott-McQuigg filed an internal formal complaint of "Discrimination, Harassment and Retaliation" with Dr. Alysa Rollock ("Rollock"), Purdue's Vice President of Human Relations (Pl. Dep. Ex. M).  In that complaint, the Plaintiff stated her belief that Dr. Linda Simunek ("Simunek") had used "false promises" to lure the Plaintiff from a position at the University of Illinois at Chicago "into a situation where [Simunek] had no intentions of ensuring that I would have an equal opportunity to develop my career, advance in academic rank within the University, and fulfill the role of Director of Research." *Id*.  These actions, according to the complaint, "resulted in loss of income, stressful hostile encounters, and attempts to defame [Plaintiff's] professional and personal reputation." *Id*.  The complaint also stated that Simunek failed to properly support the Plaintiff in her role as Director of Nursing

---

[1]  The Trustees of Purdue University is a corporation created by the Indiana General Assembly.  Ind. Code § 20-12-36-4.  The Trustees of Purdue University operate Purdue University.  Ind Code § 20-12-36-1, *et seq*.  The Trustees of Purdue University has the statutory authority to "govern, by specific regulation and other lawful means, the conduct of students, faculty, employees, and others while upon the property owned, used, or occupied by the institution[]."  Ind. Code § 20-12-1-2(a)(2).

Research and that Simunek marginalized the Director position. *Id*. The complaint stated that Plaintiff believed she had been defamed by Simunek and others within the School of Nursing. *Id*. The complaint also listed several acts which the Plaintiff believed to be retaliation for instituting the informal complaint process: (1) exclusion from hiring decisions related to Dr. Laura Sands ("Dr. Sands"); (2) obstructing established guidelines for handling research proposal information; and (3) attempts to change research and teaching requirements. *Id*.

The Plaintiff filed three additional internal formal complaints of "harassment and retaliation" against Simunek from July 30, 2002 through August 23, 2002. (Pl. Dep. Exs. N, O, P). The Plaintiff complained that Dr. Sands was assigned to teach a course which the Plaintiff was hired to teach and had been teaching since the fall of 2000. (Pl. Dep. Ex. N). She also complained that her name had been omitted from the "New Business" section of a proposed agenda for a School of Nursing Faculty Meeting and that she was not included in the planning of that meeting. (Pl. Dep. Ex. O). She also complained that the failure to change her title to "Associate Head of Research" from "Director of Research," and the resulting exclusion of the Plaintiff from Executive Committee meetings, constituted harassment and retaliation. (Pl. Dep. Ex. P).

Dr. Walcott-McQuigg's complaints were investigated by Judith DiIorio ("DiIorio"), the Director of Affirmative Action/Equal Opportunity at Indiana University Purdue University Fort Wayne. (Pl. Dep. at 76:7-16). DiIorio interviewed the parties and witnesses and reviewed documents given to her by the Plaintiff and Simunek. (Pl. Dep. Ex. R). DiIorio issued a report to Rollock. (Pl. Dep. Ex. Q). Rollock then consulted with a three person panel comprised of members of Purdue's Advisory Committee on Equity. (Pl. Dep. Ex. R). Rollock, who issued

written findings on October 28, 2002, ultimately determined that there was insufficient evidence to support a finding that the Plaintiff was harassed, discriminated against, or retaliated against by Simunek.  *Id*.  Rollock noted that "the evidence indicates that some of [the Plaintiff's and Simunek's] behaviors towards each other and their colleagues within the School of Nursing are unprofessional and undermine collegiality."  *Id*.  She also found that Simunek "should avoid discussing the possible terms of an offer [of employment] until she has secured the necessary University approval of the terms and conditions of such offer."  *Id*.  Rollock also noted the "need for examination and possible revision of the procedures and practices used by the School of Nursing to evaluate its faculty, determine merit raises and to communicate with faculty regarding their progress."  *Id*.

The Plaintiff filed a fifth internal complaint on October 28, 2002.  (Pl. Dep. Ex. S).  In that complaint, she accused Simunek of discrimination, harassment, and retaliation because she was assigned to teach a Community Health Nursing course along with her Nursing Research course.  *Id*.  She withdrew this complaint shortly after filing it, and the charge was not investigated.  (Pl. Dep. at 78:5-15).

On December 13, 2003, Simunek and two members of the Promotion and Tenure Committee met with Dr. Walcott-McQuigg to inform her that the Director of Nursing Research position was to be eliminated, effective January, 2003.  (Pl. Dep. at 60:7-14, Ex. K).  The elimination of the position did not result in a pay decrease for the Plaintiff.  (Pl. Dep. at 68:15-17; Pezzuto Trans. at 66:1-11).

Also on December 13, 2003, the Plaintiff filed an EEOC charge against Purdue, alleging that the elimination of the Office of Nursing Research was retaliation for raising her internal

grievances.  (Exhibit D, Pl. 12/16/02 EEOC Charge; Trans. Ex. PU-41).

In March of 2003, the Plaintiff requested the use of Purdue employee Health Risk

Appraisal ("HRA") forms to use in her research.  (Exhibit E, Pl. 5/2/03 EEOC Charge; Trans.

Ex. PU-43).  The Plaintiff received an email indicating that her request for a Research Exemption

Request had been granted.  (Ex. 17).  The Employee Assistance Program ("EAP"), which served

as custodian of the requested records, ultimately denied the Plaintiff's request to use the forms.

(Exhibit E, Pl. 5/2/03 EEOC Charge; Trans. Ex. PU-43; Pl. Dep. at 125:9-15).  On April 23,

2003, the Plaintiff filed a second EEOC charge, alleging that this decision was retaliatory and

that Simunek continued to discriminate against her by minimizing her role in the School of

Nursing Graduate Program.  (Ex. E at 2-3).

On April 18, 2003, Purdue informed the Plaintiff that she was being reassigned to a

different office.  (Exhibit F; Pl. 5/1/03 EEOC Charge; Transcript Ex. PU-45).  Several faculty

members were moved at the same time Plaintiff's office was moved.  (Pl. Dep. at 121:23-25).

On April 28, 2003, the Plaintiff filed her third EEOC charge against Purdue, alleging that this

office move was discriminatory and retaliatory.  *Id*.

On April 25, 2003, the Plaintiff sent an e-mail to Sharon Wilkerson ("Wilkerson"), an

administrator in the School of Nursing, voicing concerns about her teaching schedule.  (Ex. AA).

She asked Wilkerson why the Plaintiff was scheduled to teach five classes in the Spring 2003

Semester.  *Id*.  Wilkerson responded on May 1, 2003, stating that two of the assignments were

proctoring a distance learning course.  *Id*.  The Plaintiff was also assigned to teach the research

and community health lecture courses to which she had been assigned in the past, in addition to a

Community Health Practicum, to which she had not been assigned in the past.  *Id*.  The Plaintiff

6

responded on May 2, 2003, stating that "[p]roctoring courses implies expertise – I don't have it for those courses."  *Id.*  The Plaintiff's assignments were subsequently changed.  (Ex. I, Kirpatrick Transcript at 310:19 - 311:7).

On May 1, 2003, the Plaintiff filed her fourth EEOC charge, alleging that Simunek retaliated against her by refusing to develop a "progression plan" regarding her teaching loads. (Ex. J, Pl. 5/9/03 EEOC Charge, Transcript Ex. PU-47).  Shortly after, on May 4, 2003, the Plaintiff filed a fifth EEOC charge alleging that Wilkerson had retaliated against the Plaintiff by assigning her to teach courses for which the Plaintiff was not qualified.  (Ex. K, Pl. 5/12/03 EEOC Charge, Transcript Ex. PU-49).

The Plaintiff filed this lawsuit on July 16, 2003.  (Plaintiff's Complaint).

In January 2004, the Plaintiff e-mailed Jane Overbay ("Overbay"), stating that she did not feel qualified to teach the clinical courses assigned to her.  (Pl. Dep. Ex. X).  She also sent letters to the Commission on Collegiate Nursing Education and the Indiana State Board of Nursing in which she complained that she was not qualified to teach the clinical courses assigned to her. (Ex. M, Pl. 01/20/02 Letter to CCNE, Ex. N, Pl. 01/20/2004 Letter to State Board of Nursing).

One of the courses assigned to the Plaintiff involved supervising senior level students' treatment of homebound patients in the community.  (Novak Trans. at 115:22-25 - 116:2).  All of the clients on the clinical course's caseload were assigned to her.  (Pl. Dep. at 693:12-18).  In January 2004, Dr. Julie Novak ("Dr. Novak") was contacted by a client, Peggy Haville ("Haville"), who received care through this clinical course.  (Ex. H, Haville Trans. 125:1-20; 127:7-10, 19-23; Novak Trans. at 138:18 - 141:2, 211:5-20).  Though classified as "homebound" by Purdue, Haville went to restaurants and visited her physician.  (Haville Trans. at 136:20-23).

There was no written contract between the School of Nursing and Haville. (Haville Trans. at 136:20-23). The service was voluntary and not paid for by Haville. (Haville Trans. at 127:17-128:5). Haville contacted her internist to approve a change in her injection schedule so that she would receive her injections on the same day the clinical class met. (Haville Trans. at 126:6-10; Novak Trans. at 141:15-24). Haville then contacted the Plaintiff and told her that Friday would be acceptable for receiving clinical care. (Haville Trans. at 126:11-15). The Plaintiff told Haville that her students would not be able to administer the care. (Haville Trans. at 127:9-10; Novak Trans. at 138:22-25, 139:1-5). Haville contacted Novak, who then made arrangements for Overbay to provide the client's care. (Novak Trans. at 144:16-22; Overbay Trans. at 445:2-13).

The Plaintiff met with Overbay and Donna Schmeiser, the Clinical Course Coordinator, on February 20, 2004. In that meeting, the Plaintiff stated that she refused to validate injections and would not permit the students in her class to perform the injections. (Overbay Trans. at 440:13-16). Validation of the students' ability to perform the injections was an essential objective of the course assigned to the Plaintiff. (Overbay Trans. at 442:6-10). Overbay and Novak decided to re-assign the Plaintiff's students in that course. (Overbay Trans. at 441:2 -442:9). Overbay informed the Plaintiff of this decision on February 20, 2004. (Ex. O, 2/20/2004 Memo from Overbay to Pl., Stip. Ex. PU-20).

On February 24, 2004, the Plaintiff filed her sixth EEOC charge against Purdue, alleging that the February 20, 2004 decision to transfer the Plaintiff's clinical students was retaliation for her previous charges. (Ex. Q, Pl. 2/24/2004 EEOC charge, Tr. Ex. PU-51).

On December 11, 2004, Dr. John M. Pezzuto ("Pezzuto"), Dean of the School of Nursing, notified the Plaintiff of the initiation of termination proceedings against her and notified

8

her of the charges supporting her termination.  (Pl. Dep. Ex. Z).  Those charges included: (1)

proven incompetence; (2) gross neglect of duty; (3) improper conduct injurious to the welfare of

the University; and (4) other actions inconsistent with the responsibilities of a member of the

academic community.  *Id*.  The charges included an explanation of the factual basis for the

charges, which included: (1) the Plaintiff's abandonment of the homebound client in January,

2004; (2) the Plaintiff's refusal to teach students enrolled in the clinical course during the Spring

2004 semester; (3) the Plaintiff's statements that she was not competent to teach fundamental

clinical nursing skills; and (4) the Plaintiff's failure to complete the criteria associated with a

faculty support award.  *Id*.

From March 7, 2005 through March 9, 2005, a panel of the Purdue University Faculty

Committee on Censure and Dismissal ("Committee") was convened for a full evidentiary hearing

regarding the Plaintiff's termination.  (Ex. U, Chairman Trans. at 5:14-25).  The panel consisted

of twelve faculty members and two alternates.  (Chairman Trans. at 6:1-18).  Thirteen witnesses

testified over three days and the panel reviewed documentation designated by the Plaintiff and

the University.  The Plaintiff and Purdue were represented by counsel.  (Chairman Trans. at 8:8 -

9:2-3).  The Committee issued its report on April 29, 2005.  (Ex. V).  The Committee found that

the Plaintiff was guilty of gross neglect of duty, proven incompetence, and conduct injurious to

the welfare of the University.  (Ex. V at 2-3).  The Committee did not find that the Plaintiff was

guilty of "other actions inconsistent with the responsibilities of a member of the academic

community."  (Ex V. at 3).

The Plaintiff appealed the Committee's determination, Purdue affirmed the findings of

the Committee, and the President of the University terminated the Plaintiff's appointment on

June 29, 2005.  (Ex. W). The Plaintiff filed an amended complaint on September 6, 2005 to

include allegations relating to her termination.

      IV.   <u>Motion to Strike</u>

      Before the merits of Defendant's Motion for Summary Judgment can be addressed, it is

necessary to rule on Defendant's Motion to Strike.  Purdue seeks to strike the following materials

from the summary judgment record:

     1.     WM Exhibit 24, entitled "Ivy Tech Community College, Online Course, Register

           Nurse (RN) Refresher Course;"

     2.     All Statements in the column entitled "Literature Support for Negative Outcome"

           from Exhibit D; and

     3.     Plaintiff's list of "at least nine direct adverse actions taken by Purdue" in

           Plaintiff's Opposition Brief at pp. 18-19.

      Defendant's motion was filed on April 20, 2006.  The Plaintiff did not respond.

Therefore, the motion may be granted summarily according to Local Rule 7.1(a).[2]  At any rate,

the motion to strike is appropriate because district courts may only consider properly designated

evidence that would be admissible at trial when ruling on a motion for summary judgment.  FED.

R. CIV. P. 56(e); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 n.2 (7th Cir. 1994).

The Plaintiff's Exhibit WM-24 contains hearsay and is not supported by adequate foundation.

The column identified as "Literature Support for Negative Outcomes" in Exhibit D lacks proper

foundation and is comprised of inadmissible hearsay.  The Plaintiff's list of "nine direct adverse

_____

     [2]Local Rule 7.1(a) states: "Failure to file a response or reply within the time prescribed
[by the Rules] may subject the motion to summary ruling."

actions" is also inadmissible because the Plaintiff fails to link any of the listed actions to portions

of the designated evidence.  *See Bradley v. Work*, 154 F.3d 704, 707 (7th Cir. 1998).  *See*

*Weicherding v. Riefel*, 160 F.3d 1139 (7th Cir. 1998) (stating that a non-moving party may not

simply rest on mere denials or allegations in the pleadings).  Therefore, the Defendant's Motion

to Strike is **GRANTED**.

      V.    <u>Summary Judgment</u>

    A.    § 1981, § 1983 Claims, and Due Process Claims

The Plaintiff's Second Amended Complaint purports to raise a claim for damages under

42 U.S.C. § 1981.  The Plaintiff also argues that Purdue deprived her of a property right – her

tenured position – without due process of law, in violation of the Fourteenth Amendment.[3]

Although the Plaintiff does not elaborate on her due process argument in her brief, the Court

assumes that she seeks to state a claim under 42 U.S.C. § 1983.

Sections 1981 and 1983 require a showing that a plaintiff's rights were violated by a

"person" acting under color of state law.  *See* 42 U.S.C. §§ 1981, 1983.  Purdue, however, is not

a "person" for purposes of the Plaintiff's constitutional claims.  As the Seventh Circuit has

stated, "state universities are entities that are considered part of the state," and "[n]o cognizable

claim under the civil rights statutes can be brought against a state, because it is not a 'person' for

purposes of those provisions."  *Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003)

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Power v. Summers*, 226

F.3d 815, 818 (7th Cir. 2000); *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir.

---

[3]Though it is not clear from the Plaintiff's brief, her reference to the Fourteenth
Amendment appears to be part of her retaliation claim.  In the interest of thoroughness, however,
the Court will address the issue as if it were set forth as an independent claim.

1999);  *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991)).

Furthermore, it is by now well-settled that Purdue is immune from such claims because of its

sovereign immunity.  *See Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987).

Even if the Plaintiff's due process claims proceed to a determination on the merits, they

fail as a matter of law.  A public employee can have a constitutionally protected property interest

in continued employment.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  The employee

cannot be deprived of that property interest without due process.  *Cleveland Bd. of Educ. v.

Loudermill*, 470 U.S. 532, 546 (1985).  Due process requires "the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  In this case, the Plaintiff was given

notice of the initiation of termination proceedings against her, an explanation of the charges, and

the factual basis for each charge.  She was afforded a full evidentiary hearing before a twelve-

member faculty committee.  The Committee heard evidence from thirteen witnesses over a

period of three days and reviewed documents submitted by the parties.  The Plaintiff was

represented by counsel and was given an opportunity to question each witness and present her

case to the Committee with witnesses and documentation.  She was also given the opportunity to

appeal the findings of the Committee.  This trial-type procedure was more than adequate to

satisfy due process requirements.  *See Fong v. Purdue Univ.*, 692 F.Supp. 930, 947-50 (N.D. Ind.

1988).  In fact, it is not clear what "additional or substitute procedural safeguards" could be

added to the process or that they would have any "probable value."  *Mathews* 424 U.S. 319 at

335.

Moreover, the Plaintiff's employment were expressly subject to the terms and conditions

of Executive Memorandum No. B-48, which prescribes the procedures by which a tenured faculty member can be terminated for cause.  In other words, the Plaintiff received the process she agreed to accept.  As the Seventh Circuit has stated, the Supreme Court "has never doubted the ability of individual employees to waive entitlements or negotiate in advance the details of the hearings they will receive."  *Batagiannis v. West Lafayette Sch. Corp.*, 454 F.3d 738, 741 (7th Cir. 2006).

Finally, the parties seem to agree that the Court must review the termination proceedings to determine whether the Plaintiff's termination is supported by "substantial evidence."  (Pl. Brief in Opposition at 21-22; Def. Reply Br. at 12-15).  The parties fail to cite a single case applying that standard to a case involving the deprivation of a property interest in the continued employment of a public employee.  Because the decisions at issue were academic decisions, the question for the Court is not whether "substantial evidence" supports the decisions but whether they are "such a departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).  If not, they will not be overturned.  *Id*.  In making that determination, the Court should "show great respect for the faculty's professional judgment."  *Id*.  The Plaintiff cannot avoid summary judgment simply because she disagrees with the academic decisions made by Purdue.  Instead, she must come forward with evidence to show that the Commitee acted arbitrarily or failed to exercise its professional judgment in making its findings.  She has failed to present any such evidence.

Because Purdue is not a "person" for the purposes of the Plaintiff's constitutional claims and because her due process claims fail on the merits, summary judgment is appropriate.

B.      Race Discrimination

Title VII makes it unlawful for employers "to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . or national origin."  42 U.S.C. § 2000(e)-2(a)(1).  A plaintiff may prove discrimination through two methods – the direct method and the indirect method.  *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).

Under the direct method, the Plaintiff may prove discrimination through direct evidence.  Direct evidence of discrimination is "evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted).  "Direct evidence is essentially an 'outright admission' that a challenged action was undertaken for one of the forbidden reasons covered in Title VII."[4]  *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432-3 (7th Cir. 2005) (citations omitted).  The Seventh Circuit has noted that "such admissions are rarely encountered." *Rogers*, 320 F.3d at 753; *see also Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992).

 The Plaintiff has failed to present any direct evidence of discrimination.  Her first example of allegedly direct evidence is a statement contained in page 13 of DiIorio's report on the Plaintiff's formal complaints to Rollock.  (Purdue's Ex. A, part 3).  DiIorio states:

> Finally, Wolcott-McQuigg's allegation appears to be based on a misconception about the meaning of equal opportunity and fair treatment as these apply to her rights and Dr. Simunek's responsibilities under university policy.  In particular, she apparently and wrongly believes that Dr. Simunek is obligated to treat her the same as other faculty of a different race and grant each of her requests or it is

---

[4]In age discrimination cases the Seventh Circuit has explained that direct evidence is exemplified by statements "taking the form of 'I fired you because of your age.'" *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted).

discrimination.

This statement is far from an "outright admission" of the type that is usually required under the direct evidence method.  *See Balderson v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (stating that "[d]irect evidence usually requires an admission by the decisionmaker.").  DiIorio did not explicitly state that any adverse action was taken because of the Plaintiff's race.  She did not state that Purdue actually treats employees differently according to race.  Even if a jury concluded that DiIorio's statement was evidence of bigotry, and it is not clear from the face of that statement that it is, that alone is not enough.  As the Seventh Circuit has held, "[b]igotry, *per se*, is not actionable.  It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and the adverse employment action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (citing *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir 2001)).  Additionally, the Plaintiff has provided no evidence to show that DiIorio was a decisionmaker[5] who could influence Purdue's employment decisions.  "Direct evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)).  A statement by a non-decisionmaker is usually insufficient under the direct method because it fails to show any "real link" between the prohibited animus and the adverse employment action. *Adams v.* 324 F.3d at 939.

The Plaintiff also contends that DiIorio's inability to spell the Plaintiff's name correctly is

---

[5]"A decisionmaker is the person responsible for the contested decision." *Cardoso*, 427 F.3d at 433.

direct evidence of discrimination.  It is not direct evidence, and it does not begin to approach the standards of direct evidence as outlined above.

The Plaintiff may also prove discrimination under the direct method through circumstantial evidence.  *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).  This type of evidence has been described as the "kind of circumstantial evidence . . . that consists of ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff."  *Id*. at 902 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).  But the Seventh Circuit made clear in *Sylvester* that circumstantial evidence need not "have a mosaic-like character" to preclude summary judgment for a defendant.  *Sylvester*, 453 F.3d at, 903.  Rather, it need only allow the trier of fact "to infer intentional discrimination by the decisionmaker."  *Rogers*, 320 F.3d at 753.

While the Plaintiff does not mention this approach in her brief, the Court assumes that her reliance on a broad category of "micro-insults" is an attempt to show circumstantial evidence of discrimination.  The Plaintiff itemizes a series of facts as "various major micro-insults she endured at Purdue."  (Pl. Brief in Opposition at 17, Pl. Aff. Ex. 1).[6]  An examination of her "micro-insult" table, however, reveals that it is little more than a list of what the Plaintiff believes to be adverse employment actions.[7]  That, by itself, is not enough under the direct

_____

[6]This exhibit is labeled as a "Microinsult table."  It contains three columns. The first lists the "microinsult."  The second lists the "Negative Outcome for Walcott-McQuigg."  The third, which has been stricken, is titled "Literature Support for Negative Outcomes."

[7]To the extent the table lists actions that might be construed as circumstantial evidence of discrimination, the statements contained in the table are wholly conclusory and unsupported by record evidence.  *See Larsen v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997) ("The object

method.  The fact that an employee who is a member of a protected class has suffered adverse

employment actions does not allow an inference of discrimination.  As discussed above, there

must be some evidence showing a causal link between the prohibited animus and the adverse

employment action.  *See Gorence*, 242 F.3d at 762.

Because the Plaintiff has failed under the direct method, she must rely on the burden-

shifting framework of the indirect method.  *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th

Cir. 2003); *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  But the Plaintiff did not even

attempt to argue in her summary judgment opposition brief that she could establish a race

discrimination claim under *McDonnell Douglas*.  Therefore, that claim is abandoned.  *See*

*Palmer v. Marion County*, 327 F.3d 588, 597-99 (7th Cir. 2003) (claim not delineated in

summary judgment opposition brief is deemed abandoned); *Medley v. City of Milwaukee*, 969

F.2d 312, 317 (7th Cir. 1992) (arguments not presented to the district court in response to

summary judgment motions are waived).

Because the Plaintiff cannot establish a *prima facie* case of discrimination under Title

VII, summary judgment on this claim is appropriate.

C.      Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee for

opposing any practice made unlawful by the Act or for engaging in other statutorily protected

---

of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with
conclusory allegations of an affidavit.") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888
(1990)).  The Plaintiff does not even bother to cite any record evidence in her table of "micro-
insults."  *See Bradley v. Work*, 154 F.3d 704, 708 (7th Cir. 1998) ("[T]he act of specifically
correllating evidence in the record to factual propositions" is "[k]ey" to the system of designating
evidence for consideration of summary judgment motions)).

conduct.  42 U.S.C. § 2000e-3(a).  A Plaintiff can prove retaliation through the direct or indirect methods.  *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) (citation ommited).  Each method will be addressed in turn.

### 1.    Direct Method

To prove retaliation under the direct method, a plaintiff must show that she engaged in protected activity and as a result suffered an adverse employment action.  *See Sylvester*, 453 F.3d at 902.  The direct method can be supported with direct evidence or circumstantial evidence.  *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).  "[D]irect evidence 'essentially requires an admission by the decision maker that his actions were based on the prohibited animus' and so is rarely present."  *Id*. (citation omitted).  The Plaintiff does not offer any direct evidence of retaliation, so she must rely on circumstantial evidence to prove retaliation under the direct method.

The Plaintiff engaged in statutorily protected conduct, and she identifies several actions she believes to be adverse employment actions.  But to establish a prima facie case of retaliation under the direct method, she must show a "causal link between the protected expression and the adverse action."  *Id*.

The Plaintiff first attempts to establish a causal connection through temporal proximity.  She states that the final report denying her internal discrimination charge was issued at the end of October, 2002, and that she was removed from her Director of Nursing position "less than two weeks later." (Pl. Brief in Opposition at 19-20).  Temporal proximity, however, is "rarely sufficient in and of itself to create a triable issue."  *Stone v. City of Indianapolis Pub. Utils. Div.*,

281 F.3d 640, 644 (7th Cir. 2002).[8]  Moreover, two weeks does not seem to be the appropriate amount of time to consider in this analysis.  More than two weeks elapsed between the issuance of the final report denying her internal discrimination charge (which was issued on October 28, 2002) and the elimination of the Office of Nursing Research (which occurred on December 13, 2002).  (Pl. Dep. Ex. R; Pl. Dep. at 60:7-14, Ex. K).  Additionally, a Plaintiff relying on temporal proximity to establish causation must show that the adverse employment action occurred soon after the statutorily protected conduct.  *See Lalvani v. Cook County Ill.*, 269 F.2d 785, 790 (7th Cir. 2001) (stating that a plaintiff can typically satisfy a *prima facie* case "when an *adverse employment action* follows close on the heels of protected expression.") (emphasis added).  The issuance of the final report is not statutorily protected conduct by the Plaintiff and, therefore, cannot be used to establish temporal proximity.  In fact, the evidence shows that the Plaintiff filed an internal complaint on August 23, 2002, nearly two months before the issuance of the final report.  As the Seventh Circuit has noted, "[a]s the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy." *Lalvani*, 269 F.2d at 790.  The two month lapse between the Plaintiff's discrimination claim and the elimination of the Office of Nursing Research is counter-evidence of any causal connection between the two.  *See Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 399 (finding a four month lapse counter-evidence of a causal connection).

The Plaintiff also identifies her list of "micro-insults" as circumstantial evidence of discrimination.  As discussed above, however, those "micro-insults" are little more than a list of

---

[8]In *Culver*, for example, the Seventh Circuit found a 72-hour period between protected activity and an adverse action insufficient to *alone* establish causation.  *Culver*, 416 F.3d at 546.

what the Plaintiff believes to be adverse employment actions.  She fails to identify any evidence showing a causal link between the protected activity and the adverse employment actions.

Finally, the Plaintiff states that the "litany of micro-insults taken together with the major insults . . . can and does give rise to a legitimate inference that the School of Nursing officials were retaliating for McQuigg's audacity to accuse them of racial discrimination."  (Pl. Brief in Opposition at 20).  Again, the Plaintiff is simply identifying what she believes to be adverse employment actions and arguing that those alone are sufficient to allow an inference of discrimination.  Under the direct method, however, the Plaintiff must produce some evidence showing a causal link between the adverse employment actions and the protected activity. *Culver* 416 F.3d at 545.  She has failed to do so.  Therefore, her claims under the direct method fail, and she must rely on the indirect method to preclude summary judgment.

### 2.    Indirect Method

To establish a Title VII retaliation claim under the indirect method, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she was performing her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly situated employees who did not engage in such protected activity.  *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).[9]   If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his actions. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 868 (7th Cir. 1995) (quoting *McDonnell Douglas*, 411 U.S.

---

[9]The Plaintiff misstates the legal standard for retaliation in her brief when she states, "retaliation only requires a adverse employment action or hostile harassing atmosphere to send the claim to a jury."  (Pl. Brief in Opposition at 19).

at 792).  Once such a reason is articulated, the burden returns to the plaintiff to show that the

employer's proffered reasons for the adverse employment action are merely pretext.  *Dunnning*,

62 F.3d at 868.[10]

The Plaintiff has failed to establish a *prima facie* case of retaliation because she cannot

establish that she was meeting Purdue's legitimate employment expectations.  Dr. John Pezzuto,

Dean of the College of Pharmacy, Nursing, and Health Sciences, testified that one of the reasons

for the elimination of the Director of Nursing Research Office position was the Plaintiff's failure

to establish her own research agenda.  (Pezzuto Trans. at 26:23 - 27:1).  He also stated that the

position would not likely have been eliminated if he thought "the office was making a difference

and . . . was really facilitating some progress."  (*Id*. at 67:7-25).

Additionally, the Plaintiff essentially admitted that she was not qualified to teach the

clinical courses assigned to her.  In an e-mail to Overbay, Plaintiff stated that she did not feel

qualified to teach the clinical courses assigned to her.  (Pl. Dep. Ex. X).  She also stated that

belief in letters to the Commission on Collegiate Nursing Education and the Indiana State Board

of Nursing. (Exs. M, N).

The Plaintiff also refused to validate students' injections, an essential objective of the

course assigned to the Plaintiff according to Overbay.  (Overbay Trans. at 442:6-10).  After six

weeks of classes in the Spring Semester 2004 the Plaintiff's students were reassigned to other

---

[10]The Defendant understandably relies on Seventh Circuit cases stating that pretext can be
shown by proof that the employer's decision: (1) had no basis in fact; (2) did not actually
motivate the employer's decision; or (3) was insufficient to motivate the employer's decision.
*See, e.g., Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).  That dictum
has been "laid to rest" by the Seventh Circuit in *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416,
417 (7th Cir. 2006).

faculty because the Plaintiff would not validate student injections.  (Schmeiser Trans. at 420:14;

Overbay Trans. at 441:25 - 442:5).  The Plaintiff did not inform administrators that she was

unwilling to validate the injections until the sixth week of the semester.  (Ex. V at 3).  The

Plaintiff responds to these facts by calling Purdue's conduct "knee-jerk" and by attempting to

show that the Plaintiff acted ethically and responsibly in refusing to validate the injections.  But it

is the employer's expectations that are at issue, not the employee's.  The Plaintiff does not

dispute that the validation of injections was an essential objective of the Nursing Fundamentals

course.

  The Plaintiff also fails to establish a *prima facie* case because she fails to identify

similarly situated employees who were treated more favorably and who did not engage in

protected activity.  To be "similarly situated," the Plaintiff "must show that her performance,

qualifications, and conduct were comparable to the nonprotected class members in 'all material

respects.'" *Dandy v. United Parcel Service*, 388 F.3d 263, 273 (7th Cir. 2004) (citations

omitted).  Evidence relevant to the comparison includes: (1) a plaintiff's current and past salary;

(2) the salary of her comparators; (3) when her comparators began working for the employer; and

(4) qualifications, experience, and education.  *Id.*

  The Plaintiff's only attempt to identify similarly situated employees is the following

statement: "There were two other white females hired at or near the time of McQuigg, Novak and

Sands, who were treated quite a bit more favorably than McQuigg."  (Pl. Brief in Opposition at

21, n. 3).[11]  The Plaintiff fails to identify the "other white females" and designates no evidence

---

[11]The Plaintiff does state, in her Opposition Brief's Statement of Facts, that "none of the 3
full professors, 2 white, in the school of nursing had the national and international research
funding . . . and peer reviewed research and other background of Plaintiff."  (Pl. Brief in

that would enable the Court to find that the named employees are appropriate comparators.

The Plaintiff has not designated evidence that would allow the Court to that find that Dr. Sands, an untenured Assistant Professor, is similarly situated to the Plaintiff.  In her Response Brief's Statement of Facts, the Plaintiff states that Dr. Sands "is a white female, with no nursing background, and is degreed in biostatics and psychology."  (Pl. Brief in Opposition at 4).  She also stated that Dr. Sands was the "only faculty hired into the School of Nursing with contract and not grant funding since the research director position was created in 2000."  (*Id*.).  But the Plaintiff was appointed as a tenured Associate Professor of Nursing and Director of Nursing Research with qualification, experience, and education different from Dr. Sands.  (Ex. 1A; Pl. Dep. at 31:26 - 32:2).  The Plaintiff differs from Dr. Sands in nearly "all material respects."  *See Dandy*, 388 F.3d at 273.  The same can be said of Dr. Novak, who was hired as a tenured full professor after serving as a tenured full Professor for seven years at the University of Virginia (Ex. 12), LaNelle Gedes, who was promoted to full Professor in 1978 (Def. Reply Br. at 8), and Simunek, who was hired by Purdue as Head Associate Dean and full Professor in 1998 with experience in University systems since 1980 (Ex. 12).

Because the Plaintiff has failed to show that she was performing her job according to Purdue's legitimate expectations and has failed identify similarly situated employees outside the protected class, she cannot make out a *prima facie* case of discrimination under the indirect method.  Summary judgment on this claim is, therefore, appropriate.

VI.    Conclusion

For the foregoing reasons, the Defendant's Motion to Strike is **GRANTED**.  The

---

Opposition at 5).

Defendant's Motion for Summary Judgment is also **GRANTED** in its entirety.  Accordingly, the

Clerk is **ORDERED to DISMISS** this case **with prejudice**.

**SO ORDERED**.

**DATE: August 30, 2006**

_____S/ ALLEN SHARP_____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**
